CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/26/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | Case No. 6:18CV00091 |
| v. | : | |
| | : | |
| $12,300.00 in U.S. Currency | : | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Now comes the plaintiff, United States of America, by and through its attorney, Krista Consiglio Frith, Assistant United States Attorney, and brings this Complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is a civil action *in rem* brought to forfeit and condemn $12,300.00 in U.S. Currency to the use and benefit of the United States, pursuant to 21 U.S.C. § 881(a), for a violation of 21 U.S.C. § 841.

### THE DEFENDANTS *IN REM*

2. The defendant property consists of the following property:

   (a) Approximately $12,300.00 in U.S. currency that was seized from Juan Manuel Barajas-Aguilar on July 2, 2018, at mile marker 186 on Interstate 81 in Rockbridge County, Virginia, and presently in the custody of United States Marshals Service in the Seized Asset Deposit Fund Account.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1395 because the property is located in this district.

6. Upon the filing of this Complaint, the plaintiff requests that the Clerk of Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule of Civil Procedure G(3)(b)(i), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## BASIS FOR FORFEITURE

7. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes (1) money, negotiable instruments, securities, and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

8. The facts supporting this Complaint are stated in the attached Declaration of Special Agent Raymond Walker, Drug Enforcement Administration, and are incorporated by reference herein.

WHEREFORE, the United States of America respectfully requests that the Clerk of Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule of Civil Procedure G(3)(b); that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property to be condemned and forfeited

to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

THOMAS T. CULLEN
United States Attorney

 */s/Krista Consiglio Frith*
Krista Consiglio Frith
VA State Bar No. 89088
 Assistant United States Attorney
Post Office Box 1709
Roanoke, VA 24008
Tel: (540) 857-2250
Fax: (540) 857-2614
Email: krista.consiglio@usdoj.gov

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/26/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

UNITED STATES OF AMERICA,
  Plaintiff

v.                                 Case No. 6:18CV00091

$12,300 IN U.S. CURRENCY,
  Defendant.

## AFFIDAVIT IN SUPPORT OF FORFEITURE *IN REM*

I, Raymond A. Walker, a Special Agent with the Drug Enforcement Administration (DEA), Washington Division Office, Washington, D.C., being duly sworn, state as follows:

### BACKGROUND AND EXPERIENCE

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have been a Special Agent with the DEA since 1999. Since that time, I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, search warrant applications, and various other crimes. I am currently assigned to the DEA High Intensity Drug Trafficking Area (HIDTA) Task Force located in Annandale, Virginia. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting

undercover operations, monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

3. Based upon my training, experience, and participation in narcotics and racketeering investigations, I have become familiar with the manner in which narcotics traffickers conduct their illegal business and the methods, language, and terms that are used to disguise conversations about their narcotics activities. From experience and training, your affiant has learned, among other things, that drug traffickers virtually never talk in the open when referring to such drugs as phencyclidine (PCP), crack cocaine, powder cocaine, heroin, or other drugs. Instead, to conceal the true nature of their illegal activities and to thwart detection by law enforcement, they refer to the drugs and drug quantities using seemingly innocent terms.

4. Based upon your affiant's knowledge, training, experience, and participation in investigations involving controlled dangerous substances, your affiant also knows that:

(a) Narcotics traffickers keep narcotics related items in their vehicles and various other locations. In addition, narcotics traffickers package their narcotics and ill-gotten proceeds in varying quantities. Individuals involved in the distribution of narcotics such as cocaine use numerous otherwise innocuous materials to package narcotics and narcotic proceeds. For example, Ziploc baggies and plastic wrap can be standard packaging material for concealing contraband.

(b) Individuals involved in narcotics trafficking often use vehicles equipped with hidden compartments or "traps" to secret narcotics, weapons, and large amounts of U.S. Currency while traveling on roadways.

2

(c) Individuals involved in narcotics trafficking often times provide law enforcement with false information regarding their identity, the identity of family members, or their associates as well as false information about their employment, occupation, and work history.

5. This affidavit is based, in part, upon information provided to me by other agents of the DEA, information provided by cooperating defendants, physical surveillance, and other information gathered during the course of this investigation. This affidavit contains information necessary to support a complaint relating to $12,300 in U.S. Currency seized from Juan Manual Barajs-Aguilar and Selena Barjas on July 2, 2018, ("subject property") that represents the proceeds of illegal activity in violation of 21 U.S.C. §§ 841 and 846.

6. As set forth in detail below, the Subject Property is forfeitable under Title 21 U.S.C. §§ 841(a)(1) and 846, resulting from unlawful acts and conspiracy to distribute a controlled substance; under Title 21 U.S.C. § 881(a)(6) as currency and other things of value constituting proceeds, facilitating property, or property furnished or intended to be furnished in exchange for a controlled substance.

## SUMMARY OF THE INVESTIGAION

7. As part of my current assignment, I have been investigating narcotics trafficking by several individuals in the northern Virginia area, including others yet unknown or not fully identified ("TARGET SUBJECTS"). As described in greater detail below, the investigation has revealed that the TARGET SUBJECTS are participating in a conspiracy to distribute and possess with intent to distribute cocaine (a Schedule II controlled substance) in violation of Title 21 U.S.C. § 841(a)(1), possession with intent to distribute and distribution of controlled substances, and Title 21 U.S.C. § 846, conspiracy to commit such offenses.

## THE INVESTIGATION

8. In March 2018, DEA Group 12 agents arrested Miguel DUARTE (DUARTE) and Carlos COTO-Vasquez (COTO) in Prince William County, Virginia, subsequent to the delivery of approximately twelve ounces of cocaine to a DEA confidential source. In May 2018, DUARTE and COTO pled guilty to conspiracy to distribute cocaine within the Eastern District of Virginia, in violation of 21 U.S.C. §§ 841 and 846. Both cooperated with DEA and provided information about their cocaine distribution network. In April 2018, agents learned that Alvaro Avila CASTRO (CASTRO) of Stafford, Virginia, was associated with the organization and responsible for supplying DUARTE and COTO with large quantities of cocaine.

9. Agents were told that CASTRO received cocaine from a cousin, described as a Hispanic male with a thin beard. According to COTO, CASTRO received cocaine in quantities of two to three kilograms every ten days. The cocaine was said to be brought to Virginia from locations in Mexico and concealed in hidden compartments of vehicles, commonly referred to as traps.

10. Cooperating sources provided agents with a cellular phone number belonging to CASTRO and told agents that CASTRO utilized the number to facilitate drug trafficking. A phone analysis of the device was conducted to determine CASTRO's source of supply, at which time agents identified a cellular number used by Juan BARAJAS (J/BARAJAS) of Chula Vista, California. In May 2018, COTO identified two photos of J/BARAJAS as CASTRO's cocaine supplier. COTO told agents that he met J/BARAJAS on two prior occasions in Virginia and that J/BARAJAS was present when CASTRO transported a half kilogram of cocaine to COTO's residence in February 2018.

11. Agents learned that J/BARAJAS traveled to Virginia in late 2017 and early 2018 and had likely traveled to the area from California. Based on aspects of the investigation, agents believed that J/BARAJAS used the trip to deliver quantities of cocaine to CASTRO. The vehicle used by J/BARAJAS to travel to Virginia was identified as a red, 2008 Toyota Scion, Illinois registration E306668. The vehicle is registered to Christian N. BARAJAS (son of J/BARAJAS) of East Moline, IL. In June 2018, agents received license plate reader (LPR) information that indicated the Toyota Scion traveled through the northern Virginia area, and as a result, believed that J/BARAJAS was the likely operator of the vehicle. Agents later went to the residence of CASTRO and observed the Toyota Scion parked at a nearby residence within the Stafford, Virginia mobile home park where CASTRO lived.

12. Law enforcement established surveillance at both locations and subsequently observed the occupants of CASTRO's Ford Explorer (believed to be CASTRO and J/BARAJAS) in the parking lot area of a nearby Lowe's store. Agents observed CASTRO and J/BARAJAS interacting with unidentified occupants of two other vehicles in a manner believed by agents to be consistent with drug trafficking because the vehicles were parked next to one another for brief periods of time in areas with reduced lighting, and on one occasion, agents observed an object being exchanged between the occupants of the Ford Explorer and a black vehicle. The agents believe the object exchanged was narcotics based on the circumstances and law enforcement experience.

13. In June 2018, law enforcement obtained Virginia court authorization and later installed a tracking device on the Toyota Scion. In July 2018, the vehicle was observed traveling away from the Stafford, Virginia area in the direction of Interstate 81 in western Virginia, at which point agents contacted area Virginia State Police (VASP) units and requested assistance with

surveillance. Troopers located the vehicle near Natural Bridge, Virginia. The vehicle was observed in violation of Virginia Code section 46.2-1054 (obstructed view) because of an air freshener and beads hanging from the rearview mirror, which resulted in a traffic stop southbound I-81 near mile marker 186. J/BARAJAS was identified as the driver, and Selena BARAJAS (J/BARAJAS's daughter) ("S/BARAJAS") and her infant daughter were identified as passengers. A state police K-9 was utilized to conduct an open air sniff of the vehicle, at which time the K-9 alerted generally for the presence of a controlled substance in the vehicle. A subsequent search of the vehicle yielded two bundles of U.S. currency concealed beneath the infant car seat in which S/BARAJAS's daughter was sitting. The currency was wrapped in plastic and concealed in a manner consistent with narcotics trafficking. The search also revealed that the dashboard of the vehicle was loose and in a condition that would indicate that the area of the vehicle might have been utilized to conceal contraband.

14. Your affiant later arrived at the scene and assisted with the search. Your affiant took possession of the currency and secured it in the passenger compartment of a government vehicle. Your affiant identified himself as a law enforcement officer to both J/BARAJAS and S/BARAJAS, both of whom agreed to be interviewed regarding the origin of the currency. Both gave verbal consent allowing a secondary search of the vehicle. The two agreed to move a short distance from the side of the highway to a nearby Budget Inn parking lot for safety purposes. J/BARAJAS agreed to speak in English, and did so fluently, but later became nervous and evasive in his response to questions and began speaking Spanish with S/BARAJAS translating for him. J/BARAJAS told agents that the items in the car belonged to him and that he was not carrying anything for anyone else. J/BARAJAS stated that he was unemployed due to health problems but

6

at one time worked building scaffolds a number of years ago. J/BARAJAS stated that the dollar amount of the seized currency totaled $14,000.

15. J/BARAJAS denied that the currency was generated from drug proceeds or other illicit means but gave conflicting versions of how he obtained the currency, initially stating that he received a call from unknown individuals in Virginia who instructed him to come pick up the money. J/BARAJAS then told agents that the money was given to him by family members of his wife and that the money would be used to purchase a childhood home in Mexico. J/BARAJS stated that their sole reason for traveling to Virginia was to pick up the currency. J/BARAJAS agreed that transporting the currency in the manner in which it was found was suspicious and that placing the currency in a bank account was more the norm. J/BARAJAS stated that he was interested in having the money returned to him but refused to provide agents his telephone number. J/BARAJAS made several vocal expressions in Spanish to S/BARAJAS that appeared to control or limit the information she provided to agents in English. J/BARAJAS instructed S/BARAJAS to provide agents with a third party telephone number belonging to his son, Ronaldo BARAJAS.

16. S/BARAJAS voluntarily signed a disclaimer form giving up interest and ownership in the seized currency. S/BARAJAS told agents that she was unaware of the origins of the money and that she was unemployed and a student at a Chula Vista, California adult school where she was attempting to obtain her GED.

17. A secondary search of the vehicle by SA Walker revealed a wallet belonging to J/BARAJAS that contained a Bank of America credit card and $2,000 USC; J/BARAJAS had an additional $290 in U.S. Currency in his front pant pockets. J/BARAJAS explained that the currency was compensation and was going to be used to pay rent for an apartment in Chula

7

Vista, California. SA Walker, witnessed by TFO Charles, returned the wallet and currency to J/BARAJAS. S/BARAJAS gave SA Walker consent to search her belongings to include a cellular phone that was in her possession. SA Walker took several photos of the call logs and returned the device. The currency wrapped in plastic, totaling $12,300, was seized as narcotics proceeds and J/BARAJAS was issued a receipt. Agents ended the interview and departed the scene.

18. Afterwards, agents counted the two bundles of currency seized from J/BARAJAS. The amount totaled to $12,300 in U.S. Currency consisting of forty-nine $100 bills, fourteen $50 bills, three-hundred and thirty-four $20 bills, and two $10 bills. Based on my training and experience, the money was bundled and wrapped in plastic in such a way that is consistent with money that is proceeds of controlled substances. Controlled substance proceeds are often concealed in such a way as to avoid reporting requirements and transported physically for the purpose of avoiding traceable transactions used in conventional banking systems.

## CONCLUSION

20. Based on your affiant's knowledge of the investigation, the circumstances surrounding the seizure, and cooperating source debriefings, your affiant believes that the seized currency was the result of ongoing criminal activity involving the distribution of narcotics. Your affiant submits that there is probable cause to believe that the subject property is the result of narcotics trafficking and is forfeitable under 21 U.S.C. § 881(a)(6) as currency and other things of value constituting proceeds, facilitating property, or property furnished or intended to be furnished in exchange for a controlled substance.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26 day of December 2018.

*Raymond A. Walker* (signature)
RAYMOND A. WALKER
Special Agent
Drug Enforcement Administration

# CIVIL COVER SHEET

6:18CV00091

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

### DEFENDANTS
$12,300.00 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Rockbridge
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Krista Consiglio Frith 540-857-2250
United States Attorney's Office
P.O. Box 1709, Roanoke, VA 24008

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [X] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 400 State Reapportionment |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | [ ] 410 Antitrust |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** / [ ] 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| | | [ ] 791 Employee Retirement Income Security Act | | [ ] 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | | |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations / [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | | [ ] 462 Naturalization Application | | |
| | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881(a)
Brief description of cause:
Civil Forfeiture

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 12/26/2018
SIGNATURE OF ATTORNEY OF RECORD: s/Krista Consiglio Frith

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.